ROBERT W. HAMILTON, complainant-respondent,

*v.*

THEODORE W. HOOD, defendant-appellant.

[Argued May 27th, 1946. Decided September 13th, 1946.]

*Mr. Andrew B. Crummy,* for the complainant-respondent.

*Mr. Abram A. Golden,* for the defendant-appellant.

The opinion of the court was delivered by

CASE, CHIEF-JUSTICE.

The appeal is from two interlocutory orders made contemporaneously on March 19th, 1946, on bill and *ex parte* affidavit, without notice. One of the orders appointed a temporary receiver of a partnership theretofore existing between the parties. The other directed the defendant Hood to show

cause one week thereafter why he should not be required to answer the bill of complaint, &c., and included an *ad interim* restraint enjoining all persons, including the defendant, from interfering with the assets and business of the partnership and from taking any action against the partnership without leave of the court first obtained. The orders premise no findings upon which their mandates rest. The question is whether the orders, having issued under those circumstances, may stand.

The bill of complaint was filed March 19th, 1946. It alleges that a partnership between the complainant and defendant had been formed by oral agreement on February 18th, 1939, to conduct a business of repairing trailer truck bodies and automobile truck bodies; that the business was conducted in a rented shop, the lease for which was taken in complainant's name and the rental for which was paid by complainant's checks and refunded by the partnership; that the rental checks for November and December, 1945, were not banked by the landlord but were returned on January 10th, 1946, with the information that the rent had been paid by Hood and that the complainant was notified to vacate; that Hood, in January, 1946, told complainant that he, Hood, was going into another business and that the men then employed by the partnership should be dismissed; that defendant Hood did discharge the employees and that the business was closed from January 31st to February 18th, on which last mentioned date defendant rehired the employees, started in the same business at the same location under a lease newly negotiated between defendant and the landlord, locked the premises against complainant and proceeded to carry on, and still carries on, the business, using the partnership machinery, equipment, inventory and supplies under the name of "Truck Trailer Equipment Corp.," a name not theretofore used; that defendant had persistently, since June 1st, 1945, committed breaches of the partnership in such fashion that it was not reasonably practicable to carry on the partnership business and, furthermore, that defendant had refused to account to complainant and to pay him his interest in the partnership. The bill prays for an accounting, that the defendant be decreed to pay com-

plainant the amount so shown to be due, that the defendant be restrained from receiving partnership moneys, that the partnership be dissolved with "a view to a distribution of assets amongst creditors and others entitled thereto," that the court appoint a temporary receiver to take charge of the partnership property with power to carry on the business pending the further order of the court, that the defendant answer, &c., and that the defendant be ordered to show cause why the temporary receiver should not be made permanent, why the receiver should not carry on the business and complete the orders then on hand and why the partnership assets should not be eventually sold, the creditors paid and the remaining assets, if any, distributed to the partners.

The bill of complaint has other incidental contents but is substantially as above set forth. It is not a creditors' bill; it does not allege that there are creditors and, except as stated above, does not mention creditors. It has no resemblance to an insolvency or a bankruptcy proceeding. It does not charge waste or financial instability. It does not set up an emergency. It does not allege fraud. It presents a disturbed relationship which had existed to greater or less extent for eight months. The precise situation which was said to exist at the time of the filing of the bill had existed for a full month prior to that time; and no prospective change of conditions was alleged. In its allegations and intent the bill was by one partner against another for an accounting, a winding up of the partnership and a distribution of the assets. The averments of the affidavit conform to the allegations of the bill.

Respondent, without pointing to any particular urgency, argues broadly for an unrestrained jurisdiction in Chancery, under general equity powers and also under the Uniform Partnership Act, *R. S. 42:4–1, et seq.,* to appoint a temporary receiver. That Chancery has the jurisdiction in proper case to appoint a temporary receiver is beyond question; but courts are loath to exercise that power, except in an emergency, without notice to the defendant and without an opportunity for him to appear.

In *Tibbals* v. *Sargeant, 14 N. J. Eq. 449,* a matter of partnership accounting, Chancellor Green held that an applica-

tion for the appointment of a receiver was a special motion of which the opposite party was entitled to notice. The reluctance of our courts to appoint a receiver without notice is further demonstrated by the observation of Chancellor Zabriskie in *Leddel's Executor* v. *Starr, 19 N. J. Eq. 159, 163,* that a receiver is rarely appointed before answer, by the consistent action of Chancellor Runyon in *Probasco* v. *Probasco, 30 N. J. Eq. 108,* and by the restatement of the rule, citing exceptions, in *Warker* v. *Warker, 102 N. J. Eq. 382; affirmed* (on the opinion below), *103 N. J. Eq. 379. Nathan* v. *Bacon, 75 N. J. Eq. 401,* had points of similarity to the instant case in that certain of the partners were in possession of all the partnership assets and were conducting the business under claim of sole ownership and not for the purpose of winding up the partnership affairs. The bill by the excluded parties sought the appointment of a receiver and the issuance of an injunction against further acts by the operating partners, but the court did not act until the return of the order to show cause. Even at that stage the court, although it appointed a receiver, said:

"It has been held in some states that on a bill for closing the affairs of a partnership, when it is admitted that the same has been dissolved, the appointment of a receiver follows as a matter of course; but in this state that rule has not been adopted. It has here been repeatedly held that in such case a receiver will be appointed only when it appears necessary to protect the interests of the parties."

See, also, the procedure followed in the cases cited therein, viz., *Renton* v. *Chaplain, 9 N. J. Eq. 62; Birdsall* v. *Colie, 10 N. J. Eq. 63; Cox* v. *Peters, 13 N. J. Eq. 39; Randall* v. *Morrell, 17 N. J. Eq. 343; Warwick* v. *Stockton, 55 N. J. Eq. 61, 67;* also the procedure in *Sobernheimer* v. *Wheeler, 45 N. J. Eq. 614,* and in *Rhodes* v. *Wilson* (not officially reported), *19 Atl. Rep. 732.*

In *Sieghortner* v. *Weissenborn, 20 N. J. Eq. 172,* a leading case in this state on dissolution of partnership, the procedure was that an injunction issued upon the filing of the bill, whereupon the complainant's motion for the appointment of a receiver and the defendant's motion to dissolve the injunc-

tion were heard together; and, the Chancellor having concluded that a receiver should be appointed and the injunction continued, the Court of Errors and Appeals (*21 N. J. Eq. 483*) reversed as to the receiver but continued the injunction until final hearing.

The provision in the receivership order that the property was to be considered as *"in custodia legis"* is not to be confused with the thought of a custodial receiver. The receiver was given "full power and authority .to manage and conduct said partnership business"—an authority which, in view of the hazards of business, should be granted with great caution, particularly when the application is *ex parte,* and should only be granted when clearly necessary for the preservation of the rights of the parties.

In *Verplanck* v. *Mercantile Insurance Co., 2 Paige's Chancery 437, 450,* it was said:

"By the settled practice of the court in ordinary suits, a receiver cannot be appointed, *ex parte,* before the defendant has had an opportunity to be heard in relation to his rights, except in those cases where he is out of the jurisdiction of the court, or cannot be found; or where, for some other reason, it becomes absolutely necessary for the court to interfere, before there is time to give notice to the opposite party, to prevent the destruction or loss of property. Formerly it was never done until after answer."

The New York Court of Appeals in *People* v. *O'Brien, 18 N. E. Rep. 692, 709,* quoted as pertinent to the discussion of appointment without notice the following extract from its opinion in *Stuart* v. *Palmer, 74 N. Y. 184:*

"Due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing, and an opportunity to be heard, is absolutely essential."

*23 R. C. L. 38 tit. "Receivers"* §§ *37* and *38,* states the rule thus:

"Courts of equity are averse to interference *ex parte* and will not ordinarily entertain an application for the appointment of a receiver except upon notice to the adverse party. Such a court has no more

power than any other court to condemn a man unheard, and to dispossess him of property *prima facie* his, and hand over its enjoyment to another on an *ex parte* claim to it. It should, therefore, exercise extreme caution in the appointment of receivers on *ex parte* applications, and be careful that a proper case is presented before it acts; and it should not be done without notice to the party whose property is to be affected, except in cases of the greatest emergency demanding the immediate interference of the court.

\*     \*     \*     \*     \*     \*     \*

"The general rule that notice must be given to the adverse party of an application for the appointment of a receiver is not inflexible, but yields to an imperative necessity for an *ex parte* appointment to prevent irreparable loss. Thus it has frequently been held that notice might be dispensed with in cases where it appeared that the defendant was insolvent and disposing of his property with the intention of placing it beyond the reach of his creditors. It must, however, clearly appear that the danger is real and that the delay incident to the giving of notice will result in an irreparable injury, and the defendant should be afforded a speedy hearing on a motion to vacate the order. Moreover it has been held that a receiver will not be appointed without notice when a court has the power to grant a temporary restraining order, without notice, and the same is ample to protect the property until notice is given and the application for a receiver heard and determined."

To the same effect *Henderson* v. *Reynolds* (*Ind.*), *81 N. E. Rep. 494.*

*High on Receivers* (*4th ed.*) *128, § 111,* says:

"Courts of equity are exceedingly averse to the exercise of their extraordinary jurisdiction by the appointment of receivers upon *ex parte* application, and this practice is never tolerated except in cases of the gravest emergency, demanding the immediate interference of the court for the prevention of irreparable injury, or in cases where defendant has absconded and willfully put himself beyond the jurisdiction of the court. And it may be stated as the settled practice, both in England and in America, to require the moving party to give due notice of the application to defendant, over whose effects he seeks the appointment of a receiver, in order that he may have an opportunity of being heard in defense, and that his property may not be summarily wrested from him upon an *ex parte* application. Even in exceptional cases of great emergency, when the relief is demanded for the prevention of irremediable injury, the courts are exteremly averse to interference *ex parte* and will ordinarily entertain the application only after notice to defendant, or after a rule to show cause."

The English rule is stated by *Kerr on Receivers* (*8th ed*) *154* and *155,* thus:

"In cases of great urgency a receiver may be appointed even before service of the writ; in such cases leave is given to serve short notice of motion with the writ, and the appointment is made in the first instance, only until the day for which notice is given. In ordinary cases of urgency leave is obtained to serve the defendant with notice of motion for a receiver along with the writ, or at any time after service of the writ and before the expiration of the time limited for appearance. * * * The rule which requires previous notice to be served on a defendant who has not appeared is subject to an exception, where the defendant has absconded to avoid service or his residence is unknown. * * *"

We are in accord with the general rule that while Chancery has jurisdiction to appoint, *ex parte,* a temporary receiver of partnership assets in cases of grave emergency made manifest by the complainant, the appointment in cases that are not of grave emergency should, with certain exceptions which do not here apply, be made on notice to the defendant and with opportunity to him to appear. That rule is general; necessarily so, as each case presents its own varying proportions of fact and urgency and scarcely may be fitted precisely to precedent or in turn become an exact precedent for the future. But in applying the rule to the facts of this case, we conclude that the bill and the supporting proofs did not call for the appointing of even a temporary receiver without notice to the defendant. Court action thereon should have been deferred until the return of an order to show cause or of some other appropriate form of notice.

The remaining question is whether our statute has enlarged Chancery jurisdiction in that respect. The statute, *R. S. 42:4–7,* provides:

"At the time of the making of the order to show cause or at any subsequent time before or after a decree of dissolution or other decree is made the court may appoint a temporary receiver or may charge the persons in actual control of the partnership assets as trustees under appointment by and accountable to the court, and, from the time of the making of such order, the property of the partnership shall, until an order of the court made to the contrary, be considered as in *custodia legis,* with a view to ultimate distribution amongst creditors and others entitled to participate therein."

We entertain doubt as to the constitutionality in point of due process of a statute which undertakes, even temporarily,

to separate a man from his property and to put the control of his business in another without notice and opportunity to be heard, unless a grave emergency which requires such harsh action is shown to exist (*Cf. Nollebaum* v. *Leckie, 31 Fed. Rep. (2d) 556; certiorari* denied, *sub nom. Guaranty Trust Co.* v. *Noxon Chemical Products Co., 280 U. S. 558; 74 L. Ed. 613*); but we have no occasion to consider the statutory provision in that light, for the reason that we look upon it as merely declaratory of the theretofore existing law.

We conclude, therefore, that the order appointing receiver should be reversed. Chancery has jurisdiction, on grounds shown, to issue an appropriate *ad interim* restraint in order to preserve the *status* of the business and property of a partnership pending the early return of an order to show cause. Such an injunction was warranted by the allegations and proofs in this case. We apprehend that the instant restraint was correlated to the appointment of a temporary receiver and that it therefore is broader than would have been allowed had the receiver not been appointed. But we are without knowledge of the present condition of the business and of the partnership assets and we, therefore, leave the defendant to apply to the Court of Chancery for such modification, if any, as the circumstances warrant.

We find nothing properly in the record to support appellant's points on special appearance.

The record will be remitted to the Court of Chancery for disposition in accordance with this opinion.

*For affirmance*—WACHENFELD, J. 1.

*For reversal*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, OLIPHANT, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, JJ. 12.