469 P.2d 829

**Carl K. SATO and Susie S. Sato, his wife,
Appellants and Cross-Appellees,**

**v.**

**FIRST NATIONAL BANK OF ARIZONA,
a national banking association, Appellee
and Cross-Appellant.**

**No. I CA–CIV 1005.**

Court of Appeals of Arizona,
Division 1,

May 28, 1970.

Rehearing Denied Aug. 5, 1970.
Review Denied Oct. 20, 1970.

———◆———

E. Gene Wade, Mesa, for appellants and cross-appellees.

Streich, Lang, Weeks, Cardon & French, by William P. French, and Preston J. Steenhoek, Phoenix, for appellee and cross-appellant.

JACOBSON, Judge.

This appeal from the Coconino County Superior Court involves a foreclosure of a mortgage, the appointment of a receiver thereunder, the sufficiency of the court's findings of fact and the sufficiency of the evidence.

Plaintiff-appellee, FIRST NATIONAL BANK OF ARIZONA, sought foreclosure of its first mortgage on certain improved real property situated in Flagstaff, Arizona. Defendants CARL K. SATO and SUSIE S. SATO counterclaimed against plaintiff for an alleged wrongful appointment of receiver and asserted certain estoppels and modification agreements in defense to the foreclosure action. The matter was tried to the court which, on findings of fact and conclusions of law, entered judgment in

favor of plaintiff on its foreclosure action and dismissed defendants' counterclaim. Defendants appeal from the judgment of foreclosure and dismissal of their counterclaim and the order appointing a receiver and the order denying defendants' motion to vacate the order appointing a receiver. Plaintiff cross-appealed from a portion of the judgment holding the defendants not personally liable for the mortgage debt.

On June 22, 1961, O'Malley-Pickrell Mortgage Co. executed and delivered to the plaintiff a promissory note in the face amount of $125,000.00, secured by a realty mortgage on an office building known as the Professional Burrus Building located in Flagstaff, Arizona. The note was payable in monthly installments of $1,055.00 on the tenth of each month, the monthly installments including interest at six percent per annum.

On April 27, 1964, the defendants agreed with O'Malley to exchange 30 acres of land located in Maricopa County for O'Malley's interest in the Burrus Building subject (according to defendants) to the mortgage. The indebtedness due plaintiff at that time was approximately $110,000.00 Payments were made regularly by the defendants until October, 1965. Following October, 1965, the monthly payments became spasmodic, sometimes running as late as 116 days. These delinquent payments continued for approximately nine months, during which time plaintiff advanced to defendants funds to pay 1964 real property taxes and made repeated attempts to require defendants to keep the note payments current. Early in 1965, plaintiff's manager in Flagstaff requested defendants to open a checking account at its Flagstaff branch and to deposit to this account rent receipts from the mortgage premises, giving plaintiff the right to draw on this account for note payments in order to keep the account current. Defendants agreed to this arrangement but failed to open such an account until several months later. When the account was opened it never contained sufficient funds to meet accruing installments and past-due defaults.

On May 27, 1966, the defendants and plaintiff's local manager met to discuss the status of the delinquent payments, delinquent taxes and the various complaints from tenants dealing with maintenance of the Burrus Building. At this meeting, defendants were informed that plaintiff could not allow these deficiencies to continue without instituting foreclosure proceedings. At this time defendants requested that they be given until July 31, 1966 to cure all defaults. This extension was refused, but defendants were informed the matter would be taken up with the local manager's supervisor. On May 31, 1966, plaintiff sent a letter to defendants, by certified mail, advising that unless all delinquencies and defaults were cured by June 10, 1966, the matter would be referred to an attorney on June 13, 1966, for the purpose of instituting foreclosure proceedings. The return receipt dated June 1, 1966, was signed "Carl Sato." No payments were forthcoming and plaintiff filed this action on June 22, 1966.

Concurrently with the foreclosure action, plaintiff filed a petition for appointment of a receiver. The trial court ordered the appointment of a receiver on June 27, 1966, after a hearing, but without notice to defendants. Notice of the appointment of the receiver was given to defendants following the hearing. On July 15, 1966, defendants filed an answer to plaintiff's complaint and a counterclaim. This counterclaim alleged the existence of a modification agreement concerning payment of plaintiff's note and the wrongful appointment of a receiver causing damages to defendants' reputation. The counterclaim prayed for exemplary damages in the sum of $10,000.00, attorneys fees in the sum of $9,696.33, actual damages, and the removal of the receiver forthwith.

In September, 1966, the receiver filed his first account and report. Defendants at this time filed their objections to the report and moved to have the order appointing receiver vacated on the grounds "that said order was entered without notice." No action was requested on defendants' motion

until December 11, 1967, approximately one and one-half years after the filing of the motion. The motion was denied on December 12, 1967.

In October, 1967, the counter-claim was amended to allege that the appointment of the receiver caused defendants substantial loss of income in addition to damage of defendants' reputation.

Defendants raised three basic issues on appeal:

(1) That the appointment of a receiver without notice is void.

(2) That the findings of fact and conclusions of law propounded by the trial court do not comply with Rule 52(a) and (b), Rules of Civil Procedure, 16 A.R.S. (1956).

(3) That the evidence did not support the trial court's judgment.

Plaintiff by way of cross appeal questions the sufficiency of evidence to support the trial court's finding that the defendants did not personally assume the subject indebtedness.

Defendants' first contention is that the initial appointment of the receiver in this matter was void for failure to give notice to the defendants of the hearing for appointment, invoking the U. S. Constitutional protection of the 14th amendment dealing with due process. As defendants state in their brief:

"Two of the most basic and incontrovertable rights guaranteed under the due process clause of the Fourteenth Amendment are notice and hearing. They are prerequisites to any judicial determination of one's vested rights, not merely a privilege or grace of the courts that can be dispensed with at will, but a constitutional guarantee that must be complied with under all circumstances."

■ If defendants are correct in this interpretation, then their other arguments concerning the trial court's action insofar as the receiver is concerned, would have some validity. However, in the case of the appointment of a receiver, we do not believe that the failure to give notice is a constitutional due process defect. It would appear that the majority of jurisdictions take the position that while the appointment of a receiver ex parte is only permissible in extreme cases where there exists a pressing emergency, such ex parte appointments are valid. American Armed Services Underwriters, Inc. v. Atlas Ins. Co., 268 Ala. 637, 108 So.2d 687 (1959); Head v. Roberts, 291 S.W.2d 483 (Tex.Civ.App.1956); Huggins v. Green Top Dairy Farms, 75 Idaho 436, 273 P.2d 399 (1954); Venza v. Venza, 94 Cal.App.2d 878, 211 P.2d 913 (1949); Industrial Machinery Co. v. Roberts, 225 Ind. 1, 72 N.E.2d 223 (1947); Hamilton v. Hood, 138 N.J.Eq. 485, 48 A.2d 819 (1946); *Contra*, Fred V. Gentsch, Inc. v. Burnett, 173 Neb. 820, 115 N.W.2d 446 (1962).

This lack of a constitutional due process requirement is also recognized in Rule 66 (a), Rules of Civil Procedure, 16 A.R.S., (as amended in 1967), which provides an appointment of a receiver may be had without notice to adverse parties where "there is substantial cause for appointing a receiver before service can otherwise be made." The conclusion to be drawn from the above-quoted cases and revised Rule 66(a), is that failure to give notice of appointment of a receiver does not make that order "void" in a constitutional sense, but only "voidable", in the sense it was erroneously entered.

■ Clearly, the order appointing the receiver in this case failed to comply with A.R.S. § 12–1242 (1956)[1] regarding notice and posting of bond and was an erroneous order which if appealed under the provisions of A.R.S. § 12–2101, subsec. F, par. 2 (1956), would require a reversal. However, defendants failed to appeal this order. Because of this failure to appeal this ap-

1. This section would appear to have been repealed effective November 1, 1967, by enactment of Rule 66(a), Rules of Civil Procedure. See State Bar Committee Notes accompanying amended Rule 66 (Supp.1969–70).

pealable intermediate order, they may not now raise this issue on an appeal from the final judgment. Wells v. Tanner Brothers Contracting Co., 103 Ariz. 217, 439 P.2d 489 (1968). We therefore hold that the order appointing a receiver without notice was not void, but is appealable, and the failure to so appeal precludes the raising of the issue on an appeal from the final judgment.

■ Defendants next contend that the trial court did not make specific findings of fact and conclusions of law concerning their affirmative defenses and counter-claim and therefore argue that a reversal must be made under the authority of Fritts v. Ericson, 87 Ariz. 227, 349 P.2d 1107 (1960). We have reviewed the findings of fact and conclusions of law of the trial court and find that Rule 52(a), Rules of Civil Procedure, supra, has been substantially complied with. Moreover, following the court's pronouncement of its findings of fact and conclusions of law defendants made no objections to such findings and conclusions, nor did they make any motion to amend or make additional findings pursuant to rule 52(b), Rules of Civil Procedure, supra. In such a case, defendants may not now raise on appeal the insufficiency of the trial court's findings and conclusions of law. O. S. Stapley Co. v. Logan, 6 Ariz.App. 269, 431 P.2d 910 (1967).

■ Defendants' last contention deals with the sufficiency of the evidence concerning their affirmative defenses, that is, that the plaintiff by its action agreed to extend the time for payment or to forebear.

Contrary to the stereotyped image of the cold-blooded financial institution foreclosing on the poor widow's homestead, the evidence here clearly demonstrates that plaintiff over some period of time, attempted to work with the defendants concerning their indebtedness in order to avoid a foreclosure. Numerous conferences were scheduled with defendants, some of which defendants ignored. A plan was submitted to defendants to enable them to deposit rent receipts in order to keep the loan current, which plan the defendants effectively ignored. As a last resort the plaintiff's local manager went to his superiors to attempt to work out an extension of time. However, during all of these attempts to help defendants, they were repeatedly warned that if the note was not brought current, foreclosure of the mortgage would have to be resorted to. Finally, when all other efforts to obtain payment on the loan proved futile, plaintiff notified defendants by certified mail that if payments were not brought current by a specific date, foreclosure would follow. The return receipt of the certified mail bears the signature of defendant Carl Sato. While there is some contention that this was not Carl Sato's signature, there is no contention that the letter was not received at defendants' home. The demand date came and passed and no payments were forthcoming. Then and only then was this foreclosure suit filed.

The court is not persuaded by defendants' attempt to convert a bona fide effort on the part of plaintiff to assist them and avoid foreclosure into some agreement on the part of plaintiff to forebear foreclosure or extend time for payment. The evidence more than sustains the trial court's determination that defendants' affirmative defenses were not proved.

■ Defendants' counterclaim was based upon the wrongful appointment of a receiver. We have previously held in this opinion that the failure of defendants to appeal the order appointing the receiver precludes them from raising the issue of the wrongfulness of appointment on appeal from the final judgment. The defendants' counterclaim in this matter is in the nature of a collateral attack on this order. An appealable order, not void, though erroneous, is binding on all parties until reversed and after the time for appeal has expired it is not subject to collateral attack. Pratt v. Anderson, 126 Wash. 30, 216 P. 885 (1923); *see* City of Phoenix v. Sanner, 54 Ariz.

363, 95 P.2d 987 (1939); First National Bank of Globe v. McDonough, 19 Ariz. 223, 168 P. 635 (1917).

On its cross-appeal, plaintiff questions the sufficiency of the evidence to support the trial court's determination that defendants did not personally assume the mortgage indebtedness. The deed by which defendants obtained title to the subject property recited that defendants agreed to assume and pay the plaintiff's mortgage. Defendants did not sign this deed. On the other hand, the exchange agreement by which defendants agreed to acquire the property is subject to the interpretation that defendants did not agree to become personally liable on the note and mortgage. There was testimony that defendants never saw the deed, it being recorded by a title company, and that by their exchange agreements they did not agree to assume personal liability for plaintiff's debt. The evidence being conflicting, we will not substitute our judgment for that of the trial court. *See* Fishback v. J. C. Forkner Fig Gardens, 137 Cal.App. 211, 30 P.2d 586 (1934).

Judgment of the trial court is affirmed.

EUBANK, P. J., and HAIRE, J., concur.