547 P.2d 1065

**BAYLESS INVESTMENT & TRADING COMPANY, an Arizona Corporation, and Eller Outdoor Advertising Company of Arizona, a Delaware Corporation, Appellants,**

v.

**BEKINS MOVING & STORAGE COMPANY, an Arizona Corporation, Appellee.**

**No. I CA–CIV 2638.**

Court of Appeals of Arizona,
Division 1,
Department B.

April 1, 1976.

Rehearing Denied May 10, 1976.
Review Denied June 2, 1976.

Moore & Romley by Elias M. Romley and Arthur E. Romley, Phoenix, for appellants.

Rawlins, Ellis, Burrus & Kiewit, by Chester J. Peterson, Phoenix, for appellee.

## OPINION

HAIRE, Chief Judge, Division 1.

The questions raised on this appeal concern the propriety of the granting of a preliminary injunction by the trial court in litigation in which the plaintiff-appellee sought to enforce its alleged rights in parking area easements granted pursuant to written agreements entered into between the owners of three parcels of real property.

Prior to October 31, 1950, the Carnation Company was the owner of land which was subsequently divided into the three parcels involved. As a part of a plan to sell two parcels of the property and retain and develop the remaining parcel, Carnation entered into a written agreement with two other parties, Bekins Van and Storage Company, and A. J. Bayless Markets, Inc. The parcels were referred to in the agreement as Tracts A, B and C. The agreement recited that Carnation was in the process of constructing a building upon Tract A, and had agreed to sell Tract B to Bekins, and Tract C to A. J. Bayless Markets, Inc.[1] The property was situated

1. Appellant-defendant Bayless Investment & Trading Company subsequently became the owner of Tract C, and was the owner of Tract C at all times material to this litiga-

at the northwest corner of the intersection of Central Avenue and Indian School Road in Phoenix, Arizona, and the agreement generally evidenced the intention of the parties to establish a joint parking area on that portion of the three parcels fronting on Central Avenue, reciting that the parties had agreed:

".  .  .  to provide for the use of their customers and patrons a parking area 120 feet in width extending from the South boundary of Tract C to the North boundary of Tract A . . . . ."

Insofar as pertinent to the issues in this litigation, the specific provisions of the agreement are as follows:

"1. No building or structure of any kind shall be erected, placed, or permitted to remain upon the Easterly 120 feet of Tracts A, B and C, or either or any of said Tracts, without the written consent of the then owners of Tracts A and B and of the then owner of the Easterly 435 feet of Tract C . . . ."

\*    \*    \*    \*    \*    \*

The East wall of all buildings which may hereafter be erected upon Tracts A, B and C shall be 135 feet West of the East boundary line of said Tracts."

The next provisions of the agreement set forth the obligations of the respective parties concerning the tiling of an irrigation ditch, and the initial curbing and paving required so as to make the area usable for parking purposes. Subsequent pertinent provisions then followed:

"3. The aforesaid parking area shall conform in general appearance to the parking area in front of Third Party's No. 11 store located at the Northeast corner of Central Avenue and Roeser Road, Phoenix, Arizona, and shall be so arranged and constructed as to pro-

vide reasonable means of access thereto and therefrom from Monterosa Street, Central Avenue and Indian School Road; and said parking area shall at all times be available for use by customers, business visitors, and patrons of the parties hereto, it being expressly understood and agreed that said customers, business visitors, and patrons shall be privileged to park their motor vehicles in any part of said parking area except in the driveway referred to in the following paragraph.

\*    \*    \*    \*    \*    \*

And,

"6. The foregoing restrictions and covenants shall be deemed and taken to be covenants and restrictions running with the land and shall be binding upon the present and future owners of Tracts A and B and upon the present and future owners of Tracts A and B and upon present and future owners of the Easterly 435 feet of Tract C."

Paragraph 5 of the agreement, while it does not directly deal with the parking area in dispute, does affect our interpretation of the extent of the rights conferred in the parking area. In general, paragraph 5 required that Carnation provide a right-of-way extending north from Indian School Road to the northwest corner of the Bekins' parcel "in order that [Bekins] may have means of ingress and egress to and from said Tract B." This right-of-way was to the western part of the Bekins property, and was not contiguous to, or in any way a part of, the property designated by the parties as a parking area.[2]

After the execution of the 1950 agreement, Carnation built its plant and ice cream parlor on Tract A, which was the north parcel; Bekins built its warehouse

tion. While A. J. Bayless Markets, Inc., was originally made a party-defendant, judgment was entered in its favor and it is not a party to this appeal. All subsequent references in this opinion to "Bayless" shall be considered as referring to the appellant-defendant, Bayless Investment & Trading Company.

2. By agreement between the parties dated March 16, 1953, Paragraph 5 was amended so as to change the location of this right-of-way to a point farther to the west. Such amendment is not significant to the issues raised in this litigation.

and offices on the middle parcel, Tract B; and Bayless built a grocery store and shopping center on the south parcel, Tract C. The joint parking area along Central Avenue, extending from Indian School Road on the south to Monterosa Street on the north, was developed and apparently used as contemplated by the parties, without significant change or problem until the year 1968.

In 1968, Bayless demolished its grocery store and shopping center on the south parcel because of structural defects which made the buildings unsafe and dangerous. Until the Bayless buildings were demolished in 1968, Bekins found the area in front of its building entirely adequate for its customer parking. During the pre-1968 period Bekins did not allow its employees to park in front of the Bekins building in the joint parking area. After the Bayless Grocery Store closed in 1968, Bekins relaxed its rules and thereafter did permit its employees to park in the joint area. Even so, the parking area in front of the Bayless property was not needed by Bekins, except for auction sales conducted by Bekins approximately once every nine months.

Subsequent to 1968, and prior to 1971, problems arose for Bekins because too many strangers (individuals not customers of Bayless, Bekins or Carnation) were parking in the joint parking area. These strangers were overflowing from the southern part of the joint parking area, which was in front of the then vacant Bayless parcel, into the parking area in front of Bekins. At one time the Bekins manager contacted a Bayless representative concerning these problems and suggested that Bayless ought to put in some concrete bumper stops so as to make the parking area in front of the Bayless property separate from the parking area in front of the Bekins property, preventing any crossover. No decision was made on this suggestion. Shortly thereafter, the Bekins manager advised the Bayless representative that he had installed a sign in the parking area in front of the Bekins building, and that he thought that the sign would take care of the problem. That sign, which remained on the property until after the commencement of this litigation, read as follows:

"BEKINS CUSTOMERS AND EMPLOYEES PARKING ONLY. ALL OTHERS WILL BE TOWED AWAY".

In July 1971, Bayless entered into a lease agreement with AMPCO Auto Parks, Inc. (AMPCO). By the terms of this agreement, that part of the joint parking area which was situated on the easterly part of the Bayless property (Tract C) was leased to AMPCO for use as a commercial pay parking lot. AMPCO thereafter began operating the parking lot and charging a parking fee to all users. A year later, AMPCO terminated its lease. During the approximately one year period of operation as a commercial parking lot, Bayless never had any complaints from Bekins concerning that use, except concerning truck access, which complaints will be discussed in more detail later in this opinion. Also during that period, it appears that any customers of Bekins who might have used the AMPCO parking area during one of Bekins infrequent auction sales, paid AMPCO the required parking fee.

Against the above background, we now consider the facts which directly led to the present litigation. In January 1973, Bayless commenced negotiations with appellant Eller Outdoor Advertising Company of Arizona for a lease of the easterly part of Tract C, including that portion of Tract C which was a part of the joint parking area. The lease which finally evolved was dated May 8, 1973, and covered the east 150 feet of Tract C. The lease provided for the construction of a "mini-park" in conjunction with use by Eller for the purpose of installing two commercial advertising billboards.

In April 1973, prior to the execution of the lease, a representative of Eller went to

the Bekins office seeking information about the lights which were on the Bayless property. A Mr. Papo was introduced to him as the foreman or superintendent of the warehouse. The Eller representative explained to Papo Eller's plans to place advertising signs on the Tract C parking area, and that a mini-park was to be developed there. No objection was expressed on Bekins' part, although Mr. Papo expressly voiced the opinion that some opposition might be encountered from Carnation because of some prior agreement.[3] After hearing this, the Eller representative contacted Bayless' counsel and was advised to the effect that counsel considered the agreement no longer binding as to this property. The parties proceeded on that assumption. The evidence also disclosed that prior to April 30, 1973, the president of Bekins was advised by his local manager of the Bayless and Eller plans.

On May 15, 1973, Eller made a sawcut in the asphalt parking area surfacing along the common boundary line between the Bekins and Bayless properties. Between May 23 and May 26, the asphalt itself was removed. Although on May 23 and 24 top-level discussions were held within the Bekins organization concerning the proposed use of the property by Eller and Bayless, no objection was made known to Eller or Bayless concerning the proposed use until June 13, 1973, when Bekins' local counsel contacted Eller. By that time, the lease had been entered into, the sawcut of the asphalt had been made, the asphalt surfacing removed, post holes for the advertising billboards had been prepared, and some of the topsoil had been brought onto the property for the development of the contoured mini-park. Construction of the advertising signs was finished on June 19 and suit was filed on June 22, 1973.

After an evidentiary hearing on Bekins' request for a preliminary injunction, the trial court, on September 12, 1973, entered its preliminary injunction, enjoining Bayless and Eller as follows:

"IT IS THEREFORE ORDERED that Plaintiff's Petition for Preliminary Injunction be and the same is hereby granted and the Defendants, and each of them, their agents, representatives, attorneys, employees and any other persons acting in concert with them are hereby enjoined from continuing to violate the covenants, conditions, restrictions and obligations of the 'Agreement Re Restrictive Covenants' dated the 31st day of October, 1950, and recorded March 4, 1953 in Docket 1087, pages 457–462 of the official records of Maricopa County, AZ, and,

"IT IS FURTHER ORDERED that Bayless Investment & Trading and/or Eller Outdoor Advertising Company of Arizona be and they are hereby ordered to remove all structures, including the two 'billboards', erected thereon from the East 120 feet of 'Tract C' and restore the parking area thereto and thereon as required under the provisions of said agreement . . . ."

An appropriate supersedeas bond was filed by Bayless and Eller and the operation of the preliminary injunction was suspended pending this appeal.

■ In order to evaluate the contentions raised by Bayless and Eller on this appeal to the effect that Bekins has in some manner lost its rights under the 1950 agreement, we must first determine the extent of the rights initially granted. Bekins claims basically two rights under the agreement: First, a joint, non-exclusive parking right in the entire area for its customers,

---

3. The evidence does not disclose that Carnation ever voiced any opposition. In fact, Carnation did not join Bekins as a plaintiff in this litgation. The evidence disclosed that Carnation also had posted a sign on the joint parking area within its property boundary, stating:

"CARNATION RESTAURANT PARKING ONLY TIME LIMIT: ONE HOUR: DAY OR NIGHT CARS EXCEEDING LIMIT WILL BE TOWED AWAY AT OWNER'S EXPENSE."

and second, a right of access extending south across the east 120 feet of Tract C for use by Bekins' trucks for access to Indian School Road. We agree with the appellants that the agreement does not afford any access rights for Bekins' trucks across the east 120 feet of Tract C. The recitals of the agreement are quite definite in setting forth the intention of the parties "to provide for the use of their *customers* and *patrons* a parking area" (emphasis added). While paragraph 3 does state that the parking area "shall be so arranged and constructed as to provide *reasonable means of access* thereto and therefrom from Monterosa Street, Central Avenue and Indian School Road" (emphasis added), it appears from the entire agreement and particularly from the immediately following provisions in paragraph 3 that the access referred to is access for use by "customers, business visitors, and patrons of the parties." Our interpretation is strengthened when consideration is given to the provisions of paragraph 5 of the agreement, previously discussed, which specifically obligates Bayless to provide a right-of-way over a different portion of Tract C for ingress and egress to the rear of the Bekins property, with no use limitations specified.

■ There is some indication in appellee's brief that notwithstanding the failure of the 1950 agreement to create any Indian School truck access rights through the joint parking area, the evidence was sufficient to show the acquisition by Bekins of such rights by prescription. We reject this contention, not only because it is not supported by the evidence, but also for the reason that prescriptive rights issues were

not framed by the pleadings, were not tried by the parties, nor adjudicated by the trial court.

■ In our opinion the effect of the parking area provisions in the 1950 agreement, insofar as pertinent to the issues raised in this litigation, was to grant to Bekins a parking easement for the non-exclusive use of its customers, business patrons and visitors in the specified portion of Tract C.[4] With the foregoing in mind, we now proceed to consider in more detail the specific issues raised on appeal.

■ The first of appellants' four contentions is that the trial court failed to consider the equitable defenses raised in their answer. This contention emerges because of the failure of the trial court to make findings of fact concerning these defenses.[5] Initially we note that neither party specifically requested that the trial court make findings of fact. However, inasmuch as the hearing involved a request for a preliminary injunction, no request was necessary. Rule 52(a), Rules of Civil Procedure, places a duty upon the trial judge to make findings of fact and conclusions of law in granting or refusing preliminary injunctions, and does not condition that duty upon a prior request by the parties.

■■ In this case the trial judge prepared his own findings and conclusions. Although Rule 52(b) affords a party the opportunity to file a motion requesting the Court to amend its findings or make additional findings, appellants did not take advantage of this opportunity by requesting additional findings concerning its defenses, nor object in any way to the findings made. We recognize that under the provisions of Rule 52(b) this failure to object does not

4. An easement may be created by an agreement when sufficient in form. *State ex rel. Herman v. Schaffer*, 110 Ariz. 91, 515 P.2d 593 (1973). See generally, 25 Am.Jur.2d, Easements and Licenses, § 22.

5. Of the nine findings made by the trial court, only one concerned controverted matters. It was arguably pertinent to one aspect of appellants' defenses, and reads as follows:

"8. That the signs placed on the parking area by Plaintiff Bekins and Carnation were not done in violation of the covenant or to exercise dominion or control of the parking area to the exclusion of any of the parties to the covenant, or their customers, business visitors and patrons, but were joint efforts to keep unauthorizd persons from assembling in the parking area and littering the same."

deprive appellants of the right to question on appeal the sufficiency of the evidence to support the judgment entered. On the other hand, this does not mean that appellants may sit back and not call the trial court's attention to the lack of a specific finding on a critical issue, and then urge on appeal that mere lack of a finding on that critical issue as a grounds for reversal.

We have many times held that in the interests of judicial economy and the prompt disposition of matters, alleged errors should be called to the trial judge's attention in order that he may have an opportunity to correct his own errors, thereby perhaps avoiding needless appellate delay and the wasted judicial effort necessarily involved if a different rule were applied. Here, appellants failed to call the trial court's attention to the claimed lack of findings on their affirmative defenses, and because of this failure, they are now precluded from urging that failure on appeal. *Sato v. First National Bank of Arizona,* 12 Ariz.App. 263, 469 P.2d 829 (1970). Under the circumstances, in reviewing the evidence. we will consider the evidence and all permissible inferences in a light most favorable to the appellee, and assume that the trial judge found against the appellants on their affirmative defenses, if the evidence so considered would have supported such a finding.

■ The common thread running through the remaining three questions presented by appellants is the contention that under the evidence, the equitable defenses raised by appellants precluded the granting of relief to Bekins. In considering appellants' contentions, it must be kept in mind that, although not recognized in appellants' arguments, there are two types of equitable defenses urged. The first type consists of those defenses which, if supported by the evidence, would operate to entirely extinguish Bekins' easement rights, thereby

precluding the granting of relief of any nature, whether in equity by way of injunction or at law by way of damages. The second type of defense consists of those defenses which do not necessarily operate to entirely extinguish the easement rights, but rather only operate to preclude the granting of equitable relief, thereby leaving the easement owner to whatever remedy he might have at law for damages. Without question such defenses may be urged against an attempt to enforce rights pursuant to an easement. *See City of Tucson v. Koerber,* 82 Ariz. 347, 313 P.2d 411 (1957); *McMorran Milling Co. v. Pere Marquette Ry. Co.,* 210 Mich. 381, 178 N.W. 274 (1920); Restatement of Property §§ 562–564 (1944).

■ Of the defenses urged by appellants, two might be considered to be of the type which would result in a complete extinguishment of the Bekins' easement. These are abandonment and estoppel. *See* Restatement of Property, §§ 504 and 505 (1944). Without discussing in detail the technical elements of each of these defenses, suffice it to say that in our opinion the evidence would have permitted, but was not of such nature as to require, a finding by the trial court that the easement had been extinguished. However, the evidence on these defenses cannot be dismissed from further consideration, since, even though not sufficient to require a finding of extinguishment, the same evidence, together with appellants' other evidence, would be pertinent to the appellant's contentions that in any event the trial court erred in granting equitable relief, rather than leaving plaintiff to its remedy at law for damages. Appellants' equitable defenses of the latter type constitute a multifaceted reliance upon a combination of several equitable doctrines, including laches, relative hardship and change of conditions. *See* Restatement of Property, §§ 562, 563 and 564 (1944).[6] Although we would not consider the evi-

6. The Court recognizes that these particular sections are contained in Part III of the Restatement of Property, dealing with "Promises Respecting the Use of Land", rather than specifically with easements. However, in the Court's opinion, the general equitable principles set forth therein are equally applicable to a determination of the availability of equitable remedies for the enforcement of rights flowing from easements.

dence in support of any one of these defenses in and of itself to be sufficient to require denial of equitable relief, it is our opinion that, when considered together, the conclusion is inescapable that the trial judge should not have granted a preliminary injunction in this case.

As stated in the Restatement of Property, § 563, "Injunctive relief . . . will be denied if the harm done by granting the injunction will be disproportionate to the benefit secured thereby." Here, bearing in mind that we have held that Bekins' rights under the parking area easement do not include any truck access right to Indian School Road, the only benefit to accrue to Bekins from the granting of the preliminary injunction would be to allow Bekins to make use of the parking area in Tract C on the very infrequent (once every nine months or so) occasions when it conducts an auction sale. The hardship to appellants would result not only from the preliminary injunctions requirement that they remove the commercial advertising billboards, tear up the mini-park, remove the extra topsoil, and re-surface the area for parking purposes, but also from the fact that because of the changed circumstances resulting from the demolition of the Bayless business, Bayless would not participate in the use of the parking area originally contemplated, with the result that except for trespassing strangers, practically no use would be made of the property.

As stated above, we do not base our belief that equitable relief should be denied to Bayless upon any one equitable theory exclusively. Our rationale in this regard is in accord with that stated in Comment c. to Restatement § 563, where, in discussing the doctrine of relative hardship, it is stated:

"c. *Disproportion.* It is not sufficient to create the disproportion that will justify refusing to grant injunctive relief that the harm ensuing from granting such relief will be greater than the benefit gained thereby. When the disproportion between harm and benefit is the sole reason for refusing relief, the disproportion must be one of considerable magnitude. It is but seldom that such disproportion is the sole basis for refusing the relief. Other factors ordinarily enter into the considerations which go to make up the basis of decision. Thus a combination of laches and disproportion between harm and benefit may have the effect of causing the denial of an injunction when neither alone would have caused such denial. There may, in a particular case, be multiple factors to be considered some of which lead toward giving relief while others tend in the opposite direction. When this is true, the factors on one side must be weighed against those on the other. The result may be that a relatively slight disproportion will be enough to weight the scales against granting the relief which would otherwise be given."

This same approach has been utilized by the Arizona Supreme Court in *McRae v. Lois Grunow Memorial Clinic,* 40 Ariz. 496, 14 P.2d 478 (1932), a case involving the enforcement of building restrictions on somewhat analogous facts. There the court discussed equitable defenses running from laches and acquiescence to waiver and estoppel, and including relative hardship, and indicated its conclusion as follows:

"Whether the facts present a technical estoppel or a technical waiver seems to us unimportant. The question is, Do they present a situation showing that it would be unfair, unjust and inequitable to grant plaintiffs relief against a situation brought on by their conduct? *We have examined the whole record and are satisfied that to grant the relief would occasion very much greater hardship and loss than could possibly be suffered by requiring the plaintiffs to resort to their action for damages.* We believe under the facts and circumstances the court properly exercised its discretion in refusing the injunctive relief." (Emphasis added). 40 Ariz. at 507–508, 14 P.2d at 482.

The Court then continued quoting from a Connecticut decision:

" 'Where, however, there has been an innocent mistake or a *bona fide* claim of right on the part of the defendant or laches on the part of the plaintiff, or where the conduct of the defendant was not willful and inexcusable, and where the granting of the injunction would cause damage to the defendant greatly disproportionate to the injury of which plaintiff complains, and it appears that damages will adequately compensate the latter, in such cases, it has been held that it would be inequitable to grant a mandatory injunction and the plaintiff has been remitted to his remedy by way of damages.' " 40 Ariz. at 508, 14 P.2d at 482.

Focusing upon the specific facts which in our opinion require a finding that the trial judge abused his discretion in granting injunctive relief in this case, we note that it was Bekins who suggested to Bayless that a curb or concrete bumper stops be placed on the common boundary of the Bekins and Bayless property, which would have effectively precluded any joint parking use of the two properties and therefore logically would lead Bayless to the conclusion that Bekins had abandoned all right to the parking area on the Bayless property. Thereafter Bekins placed the above-discussed sign on its property stating: "BEKINS CUSTOMERS AND EMPLOYEES PARKING ONLY, ALL OTHERS WILL BE TOWED AWAY" thereby expressing a denial to Bayless and Carnation customers of the rights specified in the 1950 agreement to park on the Bekins property, again reasonably indicating that Bekins has abandoned all right to parking on the Bayless property. The evidence further discloses that Bekins did not object to the Carnation sign on Carnation's property limiting the use of the Carnation parking area to Carnation customers only, again indicating an abandonment of Bekins' rights under the 1950 agreement.

Contrary to the legal conclusions set forth by the trial judge in its Finding No. 8, the placement of these signs by Bekins and Carnation was clearly in violation of the 1950 agreement, and notwithstanding the fact that the purpose might have been to keep unwanted strangers (individuals not customers of either Carnation, Bayless or Bekins) from parking or assembling in the parking area, still the result was an expressed indication by each that the 1950 agreement was no longer being observed. When this conduct was followed by Bekins' failure to object to the use for approximately one year of the Bayless property as a commercial parking lot by AMPCO under its lease with Bayless in July 1971, there is indeed a strong indication from which Bayless could have reasonably concluded that Bekins no longer had any desire or need to have the property available for parking by its customers.

All of these early indications of acquiescence, abandonment and laches might have been rendered harmless and immaterial, if, at the time Bekins first received notice of the Bayless and Eller plans, it had taken some action to bring to the appellants' attention its objections and continuing claims. However, it took no such action and, *it is the very fact of this latter-day non-action,* which, when viewed in the above-described setting, requires a denial of equitable relief.

In addition, after all of the above, when some 60 days before entering into a lease, an Eller representative talked to Bekins' warehouse superintendent on the premises, he was led to believe that, although "access" objections might be encountered from Carnation, Bekins had no objections. Even after the start of the destruction of the parking surface, Bekins further delayed making known its objections for a period in excess of one month, during which substantial expenditure was made by Eller in preparing the premises for the new lease purposes, and, of course, even more substantial expenditures would be required to place the premises back into a condition for use for parking purposes.

When consideration is given to this entire picture, the conclusion is inescapable that whether expressed in terms of plain-

tiff's laches, estoppel, change of conditions, or relative hardship, or a combination of all, a situation is presented which would, in the language of *McRae, supra,* make it "unfair, unjust and inequitable to grant [injunctive] relief . . . ." to Bekins.

In arriving at this conclusion, we have borne in mind that, were it not for the existence of appellants' equitable defenses, plaintiff has presented a classic case calling for the assistance of equity for the purpose of preventing the continuous obstruction of an easement. *Pinkerton v. Pritchard,* 71 Ariz. 117, 223 P.2d 933 (1950). However, in view of what we consider to be overwhelming evidence supporting appellants' equitable defenses, we hold that the trial judge abused his discretion in granting equitable relief in this case.

The preliminary injunction is hereby dissolved and the matter is remanded to the trial court for further proceedings consistent with this opinion.

JACOBSON, P. J., and EUBANK, J., concur.