656 P.2d 621

**Robert A. CALLANAN,
Plaintiff-Appellant,**

v.

**SUN LAKES HOMEOWNERS' ASSOCIATION # 1, INC., an Arizona corporation; Sun Lakes Properties, Inc., an Arizona corporation; Edward J. Robson, dba Sun Marketing Development; Maurice Kay; Jack P. Jones; Jerry Levy; Edna Pitts; Angelo Sandilla and James Stuart, Defendants-Appellees.**

**No. 1 CA–CIV 5402.**

Court of Appeals of Arizona,
Division 1, Department C.

Aug. 24, 1982.

Rehearing Denied Oct. 1, 1982.

Review Denied Oct. 19, 1982.

Paul M. Rybarsyk, Scottsdale, for plaintiff-appellant.

Powers, Ehrenreich, Boutell & Kurn by Michael F. Ruffatto, Nancy J. Beck, Phoenix, for defendants-appellees Sun Lakes Properties, Inc. and Robson.

Fennemore, Craig, von Ammon & Udall by Dwayne L. Burton, Charles M. King, Phoenix, for defendants-appellees Sun Lakes Homeowners' Association # 1, Inc., Kay, Jones, Levy, Pitts, Sandilla and Stuart.

OPINION

HAIRE, Judge.

In this appeal the appellant, who was the plaintiff in a stockholders' derivative action, contends that the trial court was without authority to award attorney's fees to the defendants (appellees) upon the entry of judgment dismissing plaintiff's complaint without prejudice.

The defendants' first motions to dismiss the complaint were based upon plaintiff's failure to allege, in accordance with Rule 23.1, Rules of Civil Procedure, 16 A.R.S., his efforts to seek redress of his alleged grievances from the directors of the defendant association or his reasons for not making those efforts. On these first motions to dismiss, the trial court ruled that the motion would be granted unless plaintiff filed an amended complaint within 20 days from the date of the ruling.

Plaintiff then timely filed an amended complaint, which was again challenged by the defendants' motions to dismiss. The basis for the motions to dismiss the amended complaint was that plaintiff still had not complied with the requirements of Rule 23.-1, having failed to allege his efforts to seek relief from the stockholders of the defendant association or his reasons for failing to seek such relief. The court granted the motions to dismiss the amended complaint by minute entry order dated October 23, 1979.

Thereafter, the defendants moved for an award of attorney's fees pursuant to the provisions of A.R.S. §§ 10–049(B) and 12–341.01. After considering plaintiff's response to the attorney's fees motions, as well as plaintiff's motion for rehearing concerning the order of dismissal, the trial court by minute entry order denied plaintiff's motion for rehearing and awarded attorney's fees to the defendants.

On March 20, 1980, a formal written judgment was entered by the trial court. That judgment dismissed plaintiff's complaint "without prejudice for Plaintiff's failure to comply with the requirements of Rule 23.1, Arizona Rules of Civil Procedure." It also gave defendants judgment against plaintiff for their attorney's fees, without specifying whether the award was being made pursuant to A.R.S. §§ 10–049 or 12–341.01.[1]

Plaintiff has timely appealed from this judgment but has raised no issues relating to the propriety of the trial court's entry of judgment dismissing his complaint. Rather, the sole question presented is:

"In a stockholders derivative action where the action is dismissed without prejudice for failure to comply with Rule 23.1, may the court properly award attorney's fees to the defendants?"

Plaintiff urges that neither A.R.S. § 10–049(B) nor § 12–341.01 furnishes support for the trial court's award of attorney's fees to defendants. We consider first the applicability of A.R.S. § 10–049(B) to the facts of this case.

A.R.S. § 10–049(B) provides:

"In any action hereafter instituted in the right of any domestic or foreign corporation by the holder or holders of record of shares of such corporation or of voting trust beneficial interest therefor, the court having jurisdiction, *upon final judgment and a finding that the action was brought without reasonable cause,* may require the plaintiff or plaintiffs to pay to the parties named as defendant the reasonable expenses, including fees of attorneys, incurred by them in the defense of such action." (Emphasis added).

Plaintiff's initial contention is that the judgment of dismissal without prejudice entered in this case was not a "final judgment". Relying upon *Decker v. City of Tucson,* 4 Ariz.App. 270, 419 P.2d 400 (1966), plaintiff contends that there can be no final judgment in an action unless the judgment "decides and disposes of the cause on its merits, leaving no question open for judicial

---

1. The judgment for attorney's fees was in the amount of $7,422.50 in favor of defendants Edward J. Robson and Sun Lakes Properties, Inc., and for $4,727.90 in favor of the other defendants-appellees.

determination." While the *Decker* decision does contain the language relied upon by plaintiff, it furnishes no support for plaintiff's position here. The actual basis for the court's dismissal of the purported appeal in *Decker* rests, not upon any question relating to the merits, but rather upon the ambiguity and inconclusiveness of the document which purported to be the "judgment" from which the appeal was taken. Thus the court stated:

"The subject 'judgment' merely grants to 'certain answering defendants' their motion for summary judgment and leaves unresolved the questions: (1) against whom? and (2) as to what?" 4 Ariz.App. at 272, 419 P.2d at 402.

Contrary to plaintiff's contentions, there are numerous Arizona decisions which hold that judgments of dismissal not based upon the merits of the underlying claim constitute final judgments. *See, e.g., Campbell v. Deddens,* 93 Ariz. 247, 379 P.2d 963 (1963); *Meloy v. Saint Paul Mercury Indemnity Co.,* 72 Ariz. 406, 236 P.2d 732 (1951); and *Miller v. The Arizona Bank,* 45 Ariz. 297, 43 P.2d 518 (1935). Plaintiff relies on *Jung v. K. & D. Mining Co.,* 356 U.S. 335, 78 S.Ct. 764, 2 L.Ed.2d 806 (1958), for the proposition that an order dismissing a complaint but allowing plaintiff to file an amended complaint is interlocutory in nature and not a final judgment. Such reliance displays a lack of thorough understanding of the United States Supreme Court's holding in *Jung,* as well as a lack of appreciation of the fundamental distinctions between an interlocutory nonappealable order, and the fact that such an order may result in a final judgment when requisite substantive and procedural formalities have been accomplished. Thus in *Jung,* after making the observation noted above, the United States Supreme Court indicated that another order of absolute dismissal after expiration of the time allowed for amendment would be required to make a final disposition of the cause. An examination of the record in *Jung* revealed that such an order had been subsequently entered, and the court held:

"It was the District Court's order of March 25, 1957, dismissing 'this cause of action,' that constituted the final judgment in the case." 356 U.S. at 337, 78 S.Ct. at 766, 2 L.Ed.2d at 808.

█ Similarly, here the trial court's initial order conditioning the denial of dismissal upon the filing of an appropriate amended complaint was not a final judgment. When, however, the plaintiff was unable to file an appropriate amended complaint, the subsequent formal written judgment dismissing the case constituted a "final judgment". Subject to plaintiff's right to appeal, the judgment completely disposed of the case and terminated the action, leaving no aspect of plaintiff's claim pending in the trial court. Such a judgment of dismissal, even though without prejudice, is a final judgment. As stated in Moore's Treatise:

"If, however, the motion is sustained and the effect is to dismiss the action for want of jurisdiction, either of the person or subject matter, or because of improper venue, or for any other reason, although the dismissal is without prejudice, the judgment is final." (Footnote omitted). 9 Moore's Federal Practice, ¶ 110.08[1], at 113.

For an opinion holding that a judgment granting a motion to dismiss a minority stockholder's derivative action complaint without prejudice constitutes a final judgment, see *Elfenbein v. Gulf & Western Industries, Inc.,* 590 F.2d 445 (2d Cir.1978).

We hold that in this case, the trial court's use of the phrase "without prejudice" did not make its judgment of dismissal any less final. Rather, as stated by the court in *Elfenbein, supra:*

"The action is terminated; however, a subsequent suit will not be barred by the doctrine of *res judicata.*" 590 F.2d at 449.

Plaintiff also urges that even if the judgment of dismissal was final in the conventional sense, we should interpret A.R.S. § 10–049(B) as requiring a final judgment *on the merits,* rather than literally applying the language used in the statute. No direct authority from Arizona or any other jurisdiction involving a substantially identical

statute[2] has been cited in support of this contention. However, we do note that in *Petkas v. Piedmont-Lindberg Corporation,* 151 Ga.App. 323, 259 S.E.2d 713 (1979), in considering whether attorney's fees could be awarded under a statute substantially identical to A.R.S. § 10–049(B), the court held that a judgment of dismissal based upon the minority stockholders' voluntary dismissal after one day of trial was a final judgment so as to give the court authority to award attorney's fees to the defendants. Likewise, in *Sackett v. Mitchell,* 264 Or. 396, 505 P.2d 1136 (1973), the court held that a judgment of dismissal without prejudice constituted a final determination of the rights of the parties and a "final judgment" for the purpose of meeting the requirements of an Oregon statute allowing the award of attorney's fees in contract actions.

Here, the statute does not expressly contain the limitation plaintiff would have us engraft upon its terms, and we cannot presume that such was the intention of the drafters in proposing § 49 of the Model Business Corporation Act or of the Arizona legislature in enacting A.R.S. § 10–049(B).

In urging that no judgment should be considered as final unless it adjudicates the merits of the minority stockholders' alleged claim, plaintiff belittles the importance of the derivative action prerequisites imposed upon a plaintiff by Rule 23.1, Rules of Civil Procedure, and the case law interpreting that rule. Normally, the remedy of a minority stockholder dissatisfied with the policies or contracts entered into by the corporation is to exercise his rights within the corporate political process. However, the corporate political process cannot be the sole remedy if majority stockholders and directors are engaged in self-dealing in violation of the rights of the minority. *Tovrea Land and Cattle Company v. Linsenmeyer,* 100 Ariz. 107, 412 P.2d 47 (1966). Nevertheless, it is recognized that there exists a potential for abuse of the derivative action:

"The derivative action is a device to protect shareholders against abuses on the part of management. Although necessary for that purpose, a derivative action may be disruptive because of the charges usually made against the directors and officers; and if unsuccessful, it is expensive to the corporation because the corporation must not only pay its own counsel but usually must reimburse the defendant directors and officers for their expenses. Thus all shareholders may suffer a diminution in the value of their shares as a result of action taken by one of them who may only have a small interest. Just as directors sometimes fail to act with the best motives, so self-interest sometimes motivates shareholders to act against the best interests of fellow shareholders." II Model Business Corporation Act Annotated § 49, ¶ 2 (2d ed. 1971).

In the trial court plaintiff was given two opportunities to show that he had exhausted his remedies within the corporate political process as required by Rule 23.1, and he failed to do so.[3] We disagree that under these circumstances the trial court's awarding of attorney's fees was premature or that the trial court could not have found an absence of "reasonable cause" on plaintiff's part. The preconditions imposed by Rule 23.1 are not mere "technical" requirements intended for the harassment of the minority stockholder plaintiff. Rather, those requirements represent society's balancing of the needs for protection of the rights of both minority stockholders and, on the other hand, the corporation, its directors, and other stockholders. We therefore hold that in exercising his discretion under A.R.S. § 10–049(B) the trial judge was entitled to consider, in determining the presence of "reasonable cause", plaintiff's failure to comply with Rule 23.1. We find no legal requirement that a defendant's re-

---

2. A.R.S. § 10–049(B) is substantively identical to § 49 of the Model Business Corporation Act. *See* Vol. II, Model Business Corporation Act Annotated, § 49, ¶ 3.01 (2d ed. 1971 & Supp. 1977).

3. Since plaintiff has failed to appeal from the judgment of dismissal, that judgment has become *res judicata* as to the basis of dismissal, and we must presume that the dismissal was legally correct.

quests for reimbursement for attorney's fees and costs must be left to turn upon a plaintiff's later decision as to whether he will abandon his claim or commence a new action, if necessary, after compliance with Rule 23.1.[4]

 . In summary, we hold that the judgment of dismissal without prejudice constituted a final judgment within the meaning of A.R.S. § 10–049(B), and that the record was sufficient to support a determination of a lack of reasonable cause for the filing of plaintiff's action. Plaintiff urges, however, that even if the record would support a finding that the filing of his action was without reasonable cause, the judgment of dismissal entered by the trial court was defective because it did not contain an *express finding* to that effect. First, even if we assume that A.R.S. § 10–049(B) requires the trial court to set forth in its judgment an express finding concerning reasonable cause, we hold that plaintiff has waived his right to urge the failure to do so as a basis for reversal. Plaintiff did not object to the form of the judgment in the trial court, or bring to the attention of the trial judge this alleged insufficiency of findings in any way. In dealing with a similar question in *Bayless Investment & Trading Company v. Bekins Moving & Storage Company*, 26 Ariz.App. 265, 547 P.2d 1065 (1976), we stated:

> "We recognize that under the provisions of Rule 52(b) this failure to object does not deprive appellants of the right to question on appeal the sufficiency of the evidence to support the judgment entered. On the other hand, this does not mean that appellants may sit back and not call the trial court's attention to the lack of a specific finding on a critical issue, and then urge on appeal that mere lack of a finding on that critical issue as a grounds for reversal.
>
> We have many times held that in the interests of judicial economy and the prompt disposition of matters, alleged errors should be called to the trial judge's

attention in order that he may have an opportunity to correct his own errors, thereby perhaps avoiding needless appellate delay and the wasted judicial effort necessarily involved if a different rule were applied." 26 Ariz.App. at 270–71, 547 P.2d at 1070–71.

*Accord, Sato v. First National Bank of Arizona*, 12 Ariz.App. 263, 469 P.2d 829 (1970).

██ More importantly, we hold that the provisions of A.R.S. § 10–049(B) do not require that the court set forth in its order or judgment express findings concerning the absence of reasonable cause. It is our opinion that the conditioning of the award of attorney's fees upon a finding that the action was brought without reasonable cause must be considered as circumscribing the conditions under which the court has authority to make an award of attorney's fees, and not as a requirement that such a finding or determination be expressly set forth in the judgment entered by the court. *Cf.* *School District No. 7 v. Weissenfluh*, 236 Or. 165, 387 P.2d 567 (1963); *People v. Murphy*, 35 Cal.App.3d 905, 111 Cal.Rptr. 295 (1973). Statutory provisions delineating the court's authority to act with language such as "if the court finds" or "upon a finding that" are not at all unusual in Arizona's statutory scheme and appellate courts should be hesitant to hold that such statutes require the trial judge to set forth express findings unless clearly required by context or other language of the statute. Rather, in such statutes the provisions should be interpreted as synonymous with "determines or decides" or "makes a determination" of the required condition. *See People v. Murphy, supra.* A.R.S. § 10–049(B), unlike Rule 52(a), Rules of Civil Procedure, 16 A.R.S., does not specify that the trial judge's finding or determination be stated "specially" or "separately" or be "set forth" in the court's order or judgment.

We therefore hold that A.R.S. § 10–049(B) does not require that the trial court's judgment set forth an express finding that plaintiff's action was brought without rea-

---

4. Plaintiff's reply brief was filed in this court on September 8, 1980, and from its contents it appears that a new action had not been filed by that date.

sonable cause. Rather, the only requirement is that the trial judge utilize the reasonable cause standard in arriving at his determination, and that the record provide support for the trial court's determination. In arriving at this holding we are aware that in *Petkas v. Piedmont-Lindberg Corporation, supra,* the Georgia Court of Appeals, without discussion, assumed that such an express finding was required under a similar statute, and remanded the appeal with instructions that the trial court "cause the appropriate finding to be made". For the reasons stated above, we do not find *Petkas* persuasive on this issue.

Since we have decided that A.R.S. § 10–049(B) furnishes ample authority to support the awarding of attorney's fees to the defendants, we need not consider alternative theories urged by the defendants in support of the judgment entered in the trial court.

The judgment is affirmed.

EUBANK and CONTRERAS, JJ., concur.