NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TABATHA T., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.T., L.T., *Appellees.*

No. 1 CA-JV 15-0273
FILED 1-14-2016

Appeal from the Superior Court in Maricopa County
No. JD528105
The Honorable Robert C. Houser, Judge (Retired)

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Maurice Portley joined.

---

**N O R R I S**, Judge:

¶1 Tabatha T. ("Mother") appeals the juvenile court's order adjudicating her children dependent as to her.

¶2 On appeal, Mother first argues the juvenile court failed to provide "specific findings of fact" supporting its dependency adjudication as required by Arizona Rule of Procedure for the Juvenile Court ("ARPJC") 55(E)(3). *See* ARPJC 55(E)(3) (juvenile court shall "[s]et forth specific findings of fact in support of a finding of dependency"). Although Mother failed to preserve this issue for our review by not raising it in the juvenile court, *see Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 21, 153 P.3d 1074, 1081 (App. 2007) (waiver is particularly appropriate "as it relates to the alleged lack of detail in the juvenile court's findings" because "a party may not 'sit back and not call the [juvenile] court's attention to the lack of a specific finding on a critical issue, and then urge on appeal that mere lack of a finding on that critical issue as a grounds for reversal'") (quoting *Bayless Inv. & Trading Co. v. Bekins Moving & Storage Co.*, 26 Ariz. App. 265, 271, 547 P.2d 1065, 1071 (1976)), waiver aside, the juvenile court "[s]et forth specific findings of fact in support of a finding of dependency." ARPJC 55(E)(3).[1]

¶3 The juvenile court found:

> [T]he Department has proved by a preponderance of the evidence that Mother is unable to parent the minor children safely and effectively due to mental health issues, as required by Rule 55(C), Ariz. R.P. Juv. Ct. The Court further finds the remaining allegations of

---

[1]Mother argues she was without a "formal mechanism" to object to the juvenile "court's final, signed, minute entry ruling." The lack of a "formal mechanism," however, did not prevent Mother from objecting to the sufficiency of the findings in the juvenile court. Mother could have raised the issue before filing the appeal and, alternatively, could have moved to set aside the judgment under ARPJC 46(E).

the Petition (inability to parent due to substance abuse and inability to parent due to neglect) are true by a preponderance of the evidence, as required by Rule 55(C), Ariz. R.P. Juv. Ct.

**¶4**        As we explained in an analogous context—termination of parental rights under ARPJC 66(F)(2)(a)—the primary purpose of requiring specific findings of fact "is to allow the appellate court to determine exactly which issues were decided and whether the lower court correctly applied the law." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24, 282 P.3d 437, 441 (App. 2012). Findings must include "'all of the 'ultimate' facts—that is, those necessary to resolve the disputed issues.'" *Id.* at 241, ¶ 25, 282 P.3d at 442 (internal quotation and citation omitted). This is to ensure the juvenile court's factual findings are sufficiently specific to enable the reviewing court to determine whether it correctly applied the law. *Id.* Thus, the level of specificity in the findings of fact and conclusions of law depends on the complexity of the legal question presented. *Id.* Our review on appeal, however, does not require the juvenile court to find "the evidentiary facts upon which the ultimate facts are based." *Id.* (citing *Gilliland v. Rodriquez*, 77 Ariz. 163, 167, 268 P.2d 334, 337 (1954)).

**¶5**        Here, the Department of Child Safety ("DCS") alleged the children were dependent as to Mother because she was unable to parent the children due to mental health issues, substance abuse, and neglect. As in *Ruben M.*, these issues and the "ultimate facts" the juvenile court needed to decide to resolve these issues were simple and straightforward. The juvenile court found DCS had proven by a preponderance of the evidence "Mother is unable to parent the minor children safely and effectively due to mental health issues" and Mother is unable "to parent due to substance abuse and" neglect. These ultimate findings are sufficiently specific to enable us to review the record and determine whether the juvenile court properly applied the law. *See id.* at 241, ¶ 28, 282 P.3d at 442.

**¶6**        Mother next argues DCS failed to present sufficient evidence proving the children dependent as to her. Reviewing the record for substantial evidence, we disagree. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93, ¶ 4, 210 P.3d 1263, 1264 (App. 2009) ("a single, deferential standard of review applies to any claim of insufficient evidence," and "we will affirm a lower court's findings of fact . . . if substantial evidence exists to support the" juvenile court's action) (internal quotations and citation omitted).

**¶7**        First, DCS presented substantial evidence Mother had mental health issues. A Crisis Prevention Team at Banner Health Hospital reported

Mother's judgment and insight was "poor" and diagnosed her with "mood disorder." A therapist at Urgent Psychiatric Care diagnosed Mother with "[a]djustment disorder," not otherwise specified; "[p]olysubstance dependence"; and "[p]ersonality disorder," not otherwise specified. A specialist at Lifewell Behavioral Wellness assessed Mother's mental health and diagnosed her with "adjustment disorder with mixed anxiety and depression" and attention deficit hyperactivity disorder ("ADHD"). And a psychologist, Daniel Juliano, Ph.d, diagnosed Mother with "mood disorder," not otherwise specified; ADHD; "rule-out"[2] "anxiety disorder with prominent obsessive-compulsive features"; and "rule-out" post-traumatic stress disorder ("PTSD"). Dr. Juliano concluded Mother has "an affective disturbance of significance" which "is difficult to pinpoint precisely . . . other than to note that she has major anxiety problems, obsessive-compulsive features, and she believes she is ADHD, but there could be a more significant mood related disturbance, perhaps even a bipolar disorder." Dr. Juliano also testified at the dependency hearing that, based on phone calls he was still receiving from Mother (including a voicemail left for him on the day of the hearing), her "mood disturbance . . . is as significant as it was" when he met with her.

¶8            DCS also presented substantial evidence that Mother's mental health prevented her from safely and effectively parenting the children. In response to a domestic violence call and report that Mother had threatened to kill herself and the children, police officers entered Mother's home and found a loaded and unsecured gun on her desk, and accessible to the children. The children's paternal grandmother, and "a primary support for the family," reported witnessing Mother's inability to "provide basic care of the children when she was visiting." Mother told a doctor at a drug treatment facility that she was "going through the counseling," she "need[ed] someone to decompress [to]," and that she could not "perform [her] motherly duties." Further, Dr. Juliano opined "the interventions in place and the expectations, which include sobriety, medication intervention, therapy, Parent Aide Services," and future "co-parenting counseling, are certainly necessary." A DCS caseworker testified she "still has concerns with Mother and the way she interacts with the children," including concerns with Mother's "untreated mental health and her ability to parent the children safely." Substantial evidence thus supports the juvenile court's finding that Mother's mental health issues prevented her from safely and effectively parenting her children.

---

[2]Dr. Juliano explained that "rule-out" "means there seem to be a lot of symptoms suggestive of" the certain disorder.

**¶9** Second, DCS presented substantial evidence that Mother was unable to parent due to substance abuse and neglect. Although Mother told Dr. Juliano she had stopped using illegal narcotics, including methamphetamine, crack cocaine, powder cocaine, ecstasy, "shrooms," and LSD, by 2009 or 2010, Mother tested positive for amphetamines, benzodiazepine, opiates, and tricyclic in September, 2014, after officers found her loaded and unsecured gun on her desk. A DCS caseworker testified Mother was continuously drug tested to "monitor her prescribed medication" to ensure she did not abuse them, and after Mother tested positive for alcohol, the caseworker became concerned with "Mother mixing alcohol with her medication." The caseworker also testified that during a monitored visitation with Mother, "when the parent aide and the children arrived to [Mother's home], Mother was disheveled, wasn't prepared for the children and their visitation that day." Further, a day before the children's removal and discovery of the gun, a police officer reported Mother "appeared to be under the influence of medication and had a very difficult time staying on track with questions." And after DCS investigated the case, it reported "numerous persons" voiced concerns about Mother "abusing her [prescribed] pain medication," and described her as "appear[ing] groggy and slurring her words." This evidence, combined with other evidence presented by DCS, *see supra* ¶ 8, supports the juvenile court's finding of Mother's inability to parent due to substance abuse and neglect.

**¶10** For the foregoing reasons, we affirm the juvenile court's order adjudicating the children dependent as to Mother.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama