NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RHONDA JEAN HERTZ, a single woman,
*Plaintiff/Counterdefendant/Appellee*,

*v.*

LAURA LYNN COY, *Defendant/Counterclaimant/Appellant.*

LAURA LYNN COY, Cross-*Claimant/Appellant,*

*v.*

SAMUEL F. COY, *Cross-Defendant/Appellee.*

No. 1 CA-CV 12-0608
FILED 07-22-2014

Appeal from the Superior Court in Navajo County
No. S0900CV20060113
The Honorable Monica L. Stauffer, Judge

**AFFIRMED**

COUNSEL

The Hendrickson Law Firm, PLLC, Tempe
By Brian W. Hendrickson

Law Office of Mark J. Leonardo, Malibu, CA
By Mark J. Leonardo, *Pro Hac Vice*
*Co-Counsel for Defendant/Counterclaimant/Appellant*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By William D. Holm, Lori L. Voepel, Eileen Dennis GilBride
*Counsel for Plaintiff/Counterdefendant/Appellee*

Samuel F. Coy, Show Low
*Cross-Defendant/Appellee In Propria Persona*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge Kent E. Cattani joined.

---

**G E M M I L L,** Judge:

**¶1**        This appeal arises out of rulings made during an eleven-day jury trial on breach of contract and intentional infliction of emotional distress claims.  Finding no abuse of discretion or error of law, we affirm.

**BACKGROUND**

**¶2**        Laura Lynn Coy ("Laura")[1] and her husband, Samuel F. Coy ("Sam"), moved from Show Low to Port Hueneme, California, in 2001. They soon discovered that pigeons had infested their California house and five hundred gallons of droppings remained between the attic's framing and drywall.  The Coys sued the seller and eventually recovered $593,471.17 in damages (the "Wachtel litigation").

**¶3**        Rhonda Hertz ("Rhonda"), Sam's former supervisor at Show Low Pontiac-GMC-Buick-Nissan, LLC ("SLP"), loaned Sam and Laura various amounts totaling $129,387.39 to pay attorneys' fees incurred during the Wachtel litigation.  Laura signed a notarized letter in April 2004 acknowledging debts to Rhonda in the amounts of $60,000 due at that time, as well as liability for $15,000 Rhonda would be advancing.

**¶4**        Sam returned to Arizona in 2002 and resumed employment at SLP, while Laura remained in California with their two children.  Sam

---

[1]  For clarity and brevity, we refer to the parties by their first names because two of them have the same last name.  We intend no disrespect by the usage of first names.

and Laura executed a separation agreement requiring Sam to pay monthly child and spousal support and to give Laura his share of the Wachtel litigation proceeds.

¶5            Laura filed for divorce in California in 2005.  During the divorce proceeding, Laura claimed that she had signed the notarized document acknowledging her obligation to Rhonda under duress.  The California family court, however, declined to hold Sam solely responsible for the loans from Rhonda, and dissolved the marriage in 2010.

¶6            Rhonda sued Sam and Laura for breach of contract in 2006 and obtained a default judgment against Sam.  Laura answered the complaint and also filed a counterclaim against Rhonda, a cross-claim against Sam, and a third-party complaint against SLP.

¶7            In the cross-claim and counterclaim, Laura alleged that (1) Rhonda's and Sam's actions intentionally caused her  emotional distress, (2) Rhonda induced Sam to breach the Coys' separation agreement and interfered with a contract and prospective economic advantage, (3) Sam engaged in fraud and conspired to defraud Laura, (4) Sam interfered with Laura's prospective economic advantage and breached their separation agreement as well as the covenant of good faith and fair dealing, (5) Laura was entitled to indemnity and declaratory relief from Sam, and (6) Rhonda aided and abetted tortious conduct and conspired to defraud Laura.  Laura's third-party complaint against SLP similarly asserted claims for intentional interference with contract and prospective economic advantage, aiding and abetting tortious conduct, and conspiracy to defraud.

¶8            The trial court granted summary judgment in SLP's favor on all claims in the third-party complaint.  It later granted summary judgment in Rhonda's favor on all claims between Laura and Rhonda except for Rhonda's breach of contract claim and Laura's intentional infliction of emotional distress claim.

¶9            During the subsequent trial, Laura testified that Sam and Rhonda's behavior reactivated trauma she had suffered as a child.  Specifically, Laura claimed that Rhonda threatened to make Laura homeless if Laura didn't "get [her] claws out of Sam."  Laura also testified that she suffered emotional distress when Sam reported her to the Social Security Administration for working and earning money notwithstanding her receipt of Social Security disability benefits.  According to Laura, Sam, Rhonda, and others hid Sam's income using loans and funneled money to

help Sam avoid paying Laura additional child support.

**¶10**        The jury returned a verdict in favor of Rhonda on the breach of contract claim and in favor of Sam and Rhonda on the intentional infliction of emotional distress claim. The trial court incorporated the verdict in a final judgment with Rule 54(b) language.[2] This appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## ANALYSIS

**¶11**        Laura challenges several trial rulings on appeal. We view the evidence and all reasonable inferences therefrom in the light most favorable to upholding the jury's verdict. *See Romero v. Sw. Ambulance*, 211 Ariz. 200, 202, ¶ 2, 119 P.3d 467, 469 (App. 2005).

I.      **The Trial Court Did Not Abuse Its Discretion In Precluding Experts and a Report**

    A.     **Emotional Distress Expert**

**¶12**        Laura challenges the exclusion of expert testimony from psychiatrist Dr. Carole Lieberman, as well as Dr. Lieberman's report, based on untimely disclosure. Citing Laura's "systemic delay, obstruction, and noncompliance" throughout the course of the litigation, the trial court rejected Laura's claim that the failure to disclose was inadvertent and thus should have been excused. *See* Ariz. R. Civ. P. 26.1(a)(6) (requiring disclosure of expert witnesses expected to testify at trial and the substance of their opinions). We review the trial court's ruling on discovery and disclosure matters for abuse of discretion. *Link v. Pima County*, 193 Ariz. 336, 338, ¶ 3, 972 P.2d 669, 671 (App. 1998).

**¶13**        Arizona Rule of Civil Procedure ("Rule") 37(c)(1) provides, in relevant part, that "[a] party who fails to timely disclose information required by Rule 26.1 shall not, unless such failure is harmless, be permitted to use as evidence at trial . . . the information or witness not disclosed, except by leave of court for good cause shown." Laura first disclosed Dr. Lieberman as an expert on January 3, 2012 and Dr. Lieberman's report on January 12, 2012, just thirty-nine days before trial. Both disclosures were past the disclosure deadline of December 23, 2011,

---

[2] The trial court did not resolve Laura's indemnity claim against Sam.

and Laura had not requested an extension under Rule 26.1(b)(2) before the deadline.

**¶14**        Once the trial court concluded that the disclosure deadline violation was not harmless because Rhonda would then have to subpoena Dr. Lieberman's file, take her deposition and provide all the information to her expert, the trial court was authorized to impose sanctions unless Laura established good cause. *See* Ariz. R. Civ. P. 37(c)(1). Factors relevant to good cause include: (1) the reason for the failure to properly disclose evidence, (2) the willfulness or inadvertence of the party's or attorney's conduct, (3) prejudice to either side that may result from excluding or allowing the evidence; (4) the opposing party's or attorney's action or inaction in attempting to resolve the dispute short of exclusion; and (5) the overall diligence with which a case has been prosecuted or defended. *Allstate Ins. Co. v. O'Toole*, 182 Ariz. 284, 288, 896 P.2d 254, 258 (1995).

**¶15**        Laura argued that her attorney mistakenly believed that he had served a disclosure statement identifying Dr. Lieberman on November 1, 2011, and thus the disclosure violation was inadvertent. But even if counsel had notified opposing counsel on November 1, 2011 that Dr. Lieberman would be a witness, the export report could not be provided by the December 12, 2011 deadline because Dr. Lieberman had yet to evaluate Laura and did not do so until January 2012. Laura did not timely seek to extend the December 12 deadline for expert reports. Moreover, Laura did not provide a compelling basis for the trial court to excuse her failure to comply with the December 12 deadline.

**¶16**        The other factors set forth in *Allstate* also support the finding that Laura failed to establish good cause. Not only did Rhonda promptly bring the issue to the trial court's attention and request enforcement of the court's deadlines, Laura used the videotaped deposition of a different expert, Dr. Jeff Titcher, at trial.

**¶17**        Although Laura now claims prejudice from the preclusion of the Lieberman evidence, she did not present that argument to the trial court, and we decline to consider her argument made for the first time on appeal. *See Sobol v. Marsh*, 212 Ariz. 301, 303 n.4, ¶ 6, 130 P.3d 1000, 1002 n.4 (App. 2006) (noting that "absent exceptional circumstances, we will not consider arguments raised for the first time on appeal.") Even without the Lieberman evidence, the jury evaluated Laura's case because both Laura and Dr. Titcher testified. The jury had to determine the credibility of the witnesses in determining whether Laura proved her case.

The fact that Dr. Lieberman was precluded from testifying was not because of any error made by the trial court, but Laura's failure to disclose the information and the prejudice that would result.[3]

**¶18**        Because the trial court was in the best position to determine the appropriate sanctions given the history of the case, the court did not abuse its discretion by precluding Laura's expert on finding that Laura failed to establish good cause for her untimely disclosure. *See Zuern v. Ford Motor Co.,* 188 Ariz. 486, 489, 937 P.2d 676, 679 (App. 1996) (affirming exclusion of an expert opinion on an alternate theory disclosed more than three months after the disclosure deadline); *accord Wong v. Regents of Univ. of Cal.,* 410 F.3d 1052, 1062 (9th Cir. 2004) (holding that district court did not abuse its discretion by refusing to permit supplemental disclosure of other expert witnesses when the discovery and disclosure deadlines had expired, even though trial was still months away, because such disruptions to the parties and court's schedule are not harmless).

**¶19**        Laura alternatively argues that she was entitled to an evidentiary hearing. "Due process does not require that a hearing be held in every case" prior to imposing Rule 37(b)(2) sanctions, and when the "fault of the party is clear from the record a hearing may not be necessary." *Robinson v. Higuera*, 157 Ariz. 622, 624, 760 P.2d 622, 624 (App. 1988). In this case, because Laura's counsel admitted that he failed to timely provide the disclosure, there was no need for a hearing.

**¶20**        Moreover, an evidentiary hearing is only required when the contemplated sanction will prevent a party from presenting the case. *See Zimmerman v. Shakman*, 204 Ariz. 231, 237, ¶ 23, 62 P.3d 976, 982 (App. 2003); *Perguson v. Tamis*, 188 Ariz. 425, 429, 937 P.2d 347, 351 (App. 1996). "If a plaintiff cannot introduce evidence of any kind because of nondisclosure the obvious outcome is the dismissal of the case." *Zimmerman* at 236, ¶ 19, 62 P.3d at 981. In that event, the court must employ the "procedural protections required under" Rule 37(c)(1). *Id.*

---

[3] The discovery violation was not the first one to occur during the six years of litigation. Laura failed to timely execute releases for her Social Security file, and her delayed disclosure of financial information required that she had to be deposed a second time. Laura also failed to disclose the name of a prior counselor whom she had seen for childhood trauma and the funds she had received from a friend to finance plastic surgery. Additionally, Rhonda had to file a motion to compel to obtain Laura's required expert witness disclosures**.**

**¶21** Unlike the plaintiff in *Zimmerman*, Laura was able to present her case, including mental health evidence, using her own testimony and testimony by Dr. Tichter. And, unlike *Perguson*, where the expert had been timely disclosed but the affidavit was only filed forty days before trial, *Perguson*, 188 Ariz. at 426, 429, 937 P.3d at 348, 351, Laura had not disclosed her expert or the report by the discovery cutoff date.

**¶22** Laura further contends that the trial court erroneously failed to consider imposing alternative sanctions. She relies upon *Wayne Cook Enterprises, Inc. v. Fain Properties Ltd. Partnership*, which holds that, prior to dismissing a case, a trial court must consider whether lesser sanctions could remedy the prejudice from the untimely disclosure. 196 Ariz. 146, 149, ¶ 14, 993 P.2d 1110, 1113 (App. 1999). Laura, however, did not propose any alternatives. Moreover, the trial court noted in imposing the sanction that it struggled with the sanction but thought it was appropriate given the violation, stating:

> Mr. Leonardo, the claim was filed five and a half years ago. And I agree and *I struggled with this myself, because of the harsh result, but to fashion a remedy after I've seen such a pattern of noncompliance and abuse, as well as, repeated requests* . . . if this wasn't a case where the other lawyer and [sic] sit back and waited to see what they could ask the judge to do at a later time, there was time after time after time after time after time and I could go on that you were asked repeatedly by Mr. Holm to supplement or provide the necessary disclosure over the course of the last five and a half years. I have not seen a case such as this, where there was such systematic delay, obstruction, and noncompliance and that is the ruling of the Court, and I stand by my ruling[.]

(Emphasis added). The trial court recognized it had alternatives, but it concluded that exclusion was the proper remedy. Because the trial court had to determine whether good cause was shown for the late disclosure, *Zimmerman*, 204 Ariz. at 236, ¶ 16, 62 P.3d at 981, it did not abuse its discretion by excluding Dr. Lieberman and her report.

### B.    Handwriting Expert

**¶23** Laura also contests the exclusion of a handwriting expert and a forensic handwriting analysis of her alleged signature on a GMAC credit application. She fails to develop or articulate her precise argument as required by Arizona Rule of Civil Appellate Procedure ("ARCAP") 13.

*See* Ariz. R. Civ. App. P. 13(a)(6) (requiring a party to support an argument with the "reasons therefor, with citations to the authorities, statutes and parts of the record relied on"). We therefore decline to address the argument. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 492 n.2, ¶ 6, 154 P.3d 391, 393 n.2 (App. 2007) (holding that a party waived an issue by only mentioning it in passing in the opening brief, citing no supporting legal authority, and failing to further develop the argument).

## II. The Trial Court Did Not Abuse Its Discretion By Ordering Production Of The Social Security Investigation Materials

**¶24** Laura challenges the admission of her Social Security Administration file into evidence at trial. She argues that the trial court disregarded a federal warning against disclosing such materials and allowed the jury to consider an incomplete investigation of Laura's alleged fraud. This court will review an evidentiary ruling for an abuse of discretion and resulting prejudice. *Selby v. Savard*, 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982). The prejudice "must affirmatively appear from the record." *Rimondi v. Briggs*, 124 Ariz. 561, 565, 606 P.2d 412, 416 (1980).

**¶25** If Laura believed that the Social Security Administration file was protected or privileged, Rule 26.1(f)(1) required her to assert that privilege "expressly" and support that claim with a description of the file's contents. Laura failed to comply with this rule, and she made no such request prior to trial.

**¶26** Even assuming that the contents of Laura's Social Security file were protected, she waived the protection by repeatedly placing her entitlement to Social Security benefits at issue. She claimed that Sam had inflicted emotional distress by jeopardizing her disability benefits in reporting her income-producing activities to the Social Security Administration. In addition, Laura's counsel suggested to the jury that Social Security records confirmed that Laura had several significant health issues. These actions opened the door for Rhonda and Sam to introduce the file for purposes of (1) establishing the truth of the report, which was relevant to whether Sam engaged in extreme and outrageous conduct in making it and (2) determining the source of Laura's claimed emotional distress. *See State v. Garcia*, 133 Ariz. 522, 526, 652 P.2d 1045, 1049 (1982) (holding that counsel who opens the door to further inquiry "may not assign its fruits as error on appeal"). The trial court therefore did not err in admitting this evidence.

### III. Laura Did Not Preserve Her Argument Concerning The Preclusion Of Intentional Acts Evidence Based Upon The Summary Judgment

¶27 Laura additionally argues that the trial court abused its discretion by precluding evidence of Rhonda's and Sam's alleged intentional conduct while at SLP based upon the grant of summary judgment to SLP. Laura fails to specify, however, what evidence was excluded and she does not develop the argument as required by ARCAP 13(a)(6). We therefore decline to address her argument. *See Polanco*, 214 Ariz. at 492 n.2, 154 P.3d at 393 n.2.

### IV. The Trial Court Did Not Commit Prejudicial Error In Allowing Laura The Breaks She Had Requested

¶28 Invoking the Americans with Disabilities Act of 1990, Laura requested that the trial court accommodate her need to take breaks during the trial. *See* 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity"). The trial court granted that request and told the jurors that:

> [F]rom time to time one or more of the parties may or may not be here or may have to leave the Courtroom for any particular reason. That is certainly their prerogative, and I've told them that's their prerogative unless they're a witness that is testifying and about to be called. So don't hold that against them if a party is or is not here.

¶29 Laura concedes that the trial court allowed her requested breaks, but she challenges the "manner" in which she was accommodated. She alleges, and the record confirms, that the trial court did not always excuse the jury when Laura took her breaks.

¶30 The trial judge has the discretion and the duty to control trial proceedings. *Brown v. U.S. Fidelity and Guar. Co.*, 194 Ariz. 85, 91, ¶ 33, 977 P.2d 807, 813 (App. 1998). Here, the trial court was not required to stop the trial for each of Laura's breaks, but only to accommodate Laura's need for breaks. The trial court amply did so while remaining mindful that the jury's time was valuable. Moreover, Laura did not object to the court's practice until the eighth day of trial when, after returning from a break, she remarked that it was "so rude to the Jury" to make it wait for her. She does not cite any instance of breaks given to her alone thereafter. On this

record, the trial court did not abuse its discretion in accommodating Laura's need for breaks.

## V. The Trial Court Did Not Abuse Its Discretion In Enforcing The Motions In Limine

¶31 Laura next contends that the trial court failed to enforce a motion in limine. Before trial, the parties agreed to limit evidence of Laura's other lawsuits to the Wachtel litigation, Laura and Sam's divorce, Laura's malpractice suit against a prior attorney, and her medical malpractice case. According to Laura, Rhonda violated that agreement by questioning Laura about information derived from a proceeding to obtain a temporary restraining order against an ex-boyfriend.

¶32 Using a document from another proceeding to refresh her recollection, Laura was questioned about whether she had paid a parking ticket for her ex-boyfriend, who had illegally parked at the airport while they were on a vacation.

> BY [RHONDA'S COUNSEL]:
>
> Q. Do you see here Airport Parking Ticket. You were complaining because you had to pay for his truck, $277.
>
> A. And Mark –
>
> Q. Ma'am, do you see that?
>
> [LAURA'S COUNSEL]: Your Honor, I point out we had an M-I-L on this, as well.
>
> [RHONDA'S COUNSEL]: I'm just asking for some dates in here.

Laura was not questioned about the temporary restraining order against the ex-boyfriend. Instead, and outside of the presence of the jury, the trial court was told that Rhoda was attempting to establish only that Laura had a boyfriend in January 2002, a time when she was allegedly suffering from emotional distress due to Sam's alleged infidelity. The trial court did not have to enforce its motion in limine because Laura's counsel stated: "Well, if you – I don't have a problem with the parking ticket, but if he mentions the lawsuit or shows the Court or shows the Jury that it is a lawsuit, I have a problem with that." Accordingly, there was no issue for the trial court to resolve.

¶**33** Laura also complains that the trial court repeatedly chastised her counsel for violations of motion in limine rulings and court deadlines, but was forgiving of similar transgressions by Rhonda's counsel. Our review of the record shows that the trial court proportionally responded to each deadline and motion in limine issue. Laura had a full and fair opportunity to present her case. Consequently, the trial court's resolution of those issues individually or cumulatively does not require a new trial.

## VI. The Trial Court Did Not Abuse Its Discretion By Excluding Laura's Rebuttal Witness

¶**34** The trial court refused to allow Laura's friend, Teri Reaman, to testify on rebuttal because Laura had failed to disclose the witness. We review the issue for an abuse of discretion. *See Waddell v. Titan Ins. Co., Inc.*, 207 Ariz. 529, 536, ¶ 28, 88 P.3d 1141, 1148 (App. 2004). We will not reverse the trial court's decision on appeal absent a showing of prejudice. *Rimondi*, 124 Ariz. at 565, 606 P.2d at 416.

¶**35** After the jury heard testimony that Laura got a parking ticket in 2002, Laura testified that the expense was incurred in 2003. Laura sought Reaman's testimony to corroborate Laura's testimony that she had taken the 2002 trip with Reaman, and not with a boyfriend. Rhonda objected that Laura had not disclosed Reaman as a witness pursuant to Rule 26.1. The trial court agreed and precluded Reaman from testifying. Laura now argues the ruling was prejudicial.

¶**36** Rule 26.1(a)(3) requires seasonable disclosure of all trial witnesses, but ultimately the trial court retains the discretion to determine whether failing to disclose a witness requires that witness be precluded. Here, Laura failed to disclose Reaman, and although Laura now argues that she had no reason to disclose Reaman because Rhonda had not disclosed the existence of the parking ticket, Laura did not make the objection at trial. We will not therefore consider it on appeal. *See Callanan v. Sun Lakes Homeowners' Ass'n No. 1, Inc.*, 134 Ariz. 332, 337, 656 P.2d 621, 626 (App. 1982) (holding an argument as a basis for reversal waived because the appellant failed to object at the trial court). On this record, we find that the trial court did not abuse its discretion by excluding Reaman's testimony.

## VII. The Trial Court Did Not Abuse Its Discretion By Failing To Take Judicial Notice Of The California Family Court's Findings

¶**37** Laura also challenges the trial court's refusal to take judicial notice of factual findings from her divorce from Sam in a California

superior court. Laura requested the trial court to take notice of the California court's finding that Sam's testimony about the reasons or necessity for his change of position to a lower paying manager job at SLP was not credible, which resulted in the California court's rejection of his request to modify the support orders.

¶38 Arizona Rule of Evidence 201(b) authorizes a court to take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In civil cases, "the court must instruct the jury to accept the noticed fact as conclusive." Ariz. R. Evid. 201(f). In construing Rule 201(b), we have authorized judicial notice of the falsity of specific allegations if established by a final judgment. *In re Pima County Mental Health No. MH-959-10-85*, 149 Ariz. 7, 9, 716 P.2d 68, 70 (App. 1986). But here, as this court noted in another case, "no authority has been cited which would extend this reasoning so as to permit the taking of judicial notice of the truth of testimony received in that other action." *State v. Lynch*, 115 Ariz. 19, 22, 562 P.2d 1386, 1389 (App. 1977). Furthermore, judicial notice is generally not appropriate when the notice sought concerns the truth of judicial findings of fact. *See* Charles Alan Wright et al., 21B Federal Practice & Procedure Evid. § 5106.4 (Supp. 2013) (analyzing the analogous federal rule and noting that "most courts agree that Rule 201 does not permit courts to judicially notice the truth of findings of fact"); *Lynch*, 115 Ariz. at 22, 562 P.2d at 1389 (noting that judicial notice is appropriate only for facts "so notoriously true as not to be subject to reasonable dispute," and citing unfavorably an argument that judicial notice must extend to the truth of testimony as found by another court).

¶39 Laura contends that her position is supported by *Fidelity Nat'l Fin., Inc. v. Friedman*, 855 F.Supp.2d 948 (D. Ariz. 2012). *Fidelity*, however, only holds that a court may judicially notice court records to show that a prior proceeding occurred or what positions were asserted. *Id*. at 955. Importantly, the District Court stated: "The parties are not requesting that the court take judicial notice of factual findings made by other courts; and, indeed, the court could not do that." *Id.* Consequently, the trial court did not err by refusing to take judicial notice of findings of fact made to reject Sam's California request to modify support.

## VIII. The Trial Court Did Not Exhibit Bias

¶40 Finally, Laura argues that the trial court exhibited judicial

bias against her and her counsel. She uses several rulings as support for her claim.

**¶41**　　　　Judges are presumed free of bias and prejudice. *State v. Ramsey*, 211 Ariz. 529, 541, ¶ 38, 124 P.3d 756, 768 (App. 2005). As the party asserting bias, Laura had the burden to rebut the presumption and establish a disqualification. *See Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195 Ariz. 148, 152, ¶ 11, 985 P.2d 633, 637 (App. 1999). Importantly, the bias and prejudice required for disqualification "must arise from an extra-judicial source and not from what the judge has done in [the judge's] participation in the case." *Smith v. Smith*, 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (App. 1977). Here, Laura did not seek to disqualify the judge for cause pursuant to Arizona Rule of Civil Procedure 42. Moreover, just because Laura does not agree with the trial court's ruling does not demonstrate bias. Accordingly, she has waived the issue on appeal. *See Smith v. Rabb*, 95 Ariz. 49, 54, 386 P.2d 649, 652 (1963) (holding that parties may not assert judicial bias for the first time on appeal).

## IX.　　Attorneys' Fees

**¶42**　　　　Rhonda requests an award of attorneys' fees on appeal pursuant to A.R.S. § 12-341.01(A). Rhonda, however, is not the successful party concerning any contractual liability. Rhonda's successful defense against Laura's claim for intentional infliction of emotional distress, a tort, likewise does not support an award of attorneys' fees. Moreover, a successful defense against Laura's claim for interference with a contract is not the type of claim upon which fees can be awarded under § 12-341.01. "The duty not to interfere with the contract of another arises out of law, not contract." *Bar J Bar Cattle Co. v. Pace*, 158 Ariz. 481, 486, 763 P.2d 545, 550 (App. 1988). We therefore deny Rhonda's request for attorneys' fees on appeal. We will, however, award taxable costs to Rhonda and Sam contingent upon their compliance with ARCAP 21(b).

### CONCLUSION

**¶43**　　　　We affirm the judgment of the trial court.



Ruth A. Willingham · Clerk of the Court
FILED: gsh